FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2012 MAR 28 AM 11:40

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ROBERT WILLIAMS, )
)
    Plaintiff, )
)
v. ) CASE NO. CV411-284
)
GEORGIA STEVEDORE )
ASSOCIATION, INC. and )
INTERNATIONAL LONGSHOREMEN'S )
ASSOCIATION LOCAL NUMBER )
1414, SAVANNAH, GEORGIA, )
)
    Defendants. )
)

## O R D E R

Before the Court is Defendant Georgia Stevedore Association, Inc.'s ("GSA") (Doc. 36) and Defendant International Longshoremen's Association Local Number 1414, Savannah, Georgia's ("ILA") (Doc. 43) Motions to Dismiss. Plaintiff has filed responses in opposition to both motions. (Doc. 40; Doc. 54.) For the reasons that follow, Defendants' motions are **DENIED**.[1]

---

[1] Plaintiff has filed a motion seeking to "dismiss the pending motion to dismiss Plaintiff's first amended complaint" or in the alternative, "to strike the reply brief and all evidence presented outside of the pleadings set forth in [Defendant GSA's] reply." (Doc. 49.) In its reply, Defendant GSA included deposition testimony as well as other factual evidence. (Doc. 48.) After careful consideration, Plaintiff's motion to strike is **GRANTED**. The Court will not consider any materials outside of the pleadings, with the exception of the Collective Bargaining Agreement, which is central to Plaintiff's claim and

## BACKGROUND

This case involves allegations of retaliation by an employee against Defendants GSA and ILA.[2] Plaintiff is employed pursuant to a Collective Bargaining Agreement ("CBA") between Defendants GSA and ILA. (Doc. 35 ¶ 5.) Defendant ILA is a labor union that contracts with employers to secure employment for employees. (Id. ¶ 9.) Defendant ILA uses a hiring hall to supply workers to several stevedore companies represented by Defendant GSA. (Id. ¶ 10.)

Clause 15(B) of the CBA between Defendant GSA and Defendant ILA provides in part that "[m]atters under dispute which cannot be promptly settled between the Local and an individual Employer shall, no later than forty-eight hours after such discussion, be referred in writing covering the entire grievance to a Port Grievance Committee." (Doc. 9, Ex. A at 43.) The CBA states that a "majority decision of this Committee shall be final and binding on both parties and on all Employers signing this Agreement." (Id. at 44.)

---

undisputed in its authenticity. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

[2] For the purposes of the motions to dismiss, Plaintiff's allegations, as set forth in his complaint, will be taken as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

The CBA also provides that

> [Defendant ILA] agrees that this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment and that during the term of this Agreement the Employers will not be required to negotiate on any further matters affecting these or other subjects not specifically set forth in this Agreement. Anything not contained in this Agreement shall not be construed as being part of this Agreement. All past port practices being observed may be reduced to writing in each port.

(Id. at 45.) Finally, the CBA contains a Longshore Seniority Plan—to which Plaintiff was subject—which outlines a separate grievance provision requiring that "[a]ny dispute concerning or arising out of the terms and conditions of this Agreement shall be referred to the Seniority Board." (Id. at 80.) If the board cannot resolve the dispute, then the "dispute shall be resolved under the procedure established under Clause 15(B) of the [CBA]." (Id.)

According to Plaintiff, he was working in 2008 as a header—a person that acts as foreman and selects qualified workers to work as a group of longshoremen from the Union hall. (Id. ¶¶ 20, 21.) Persons with the highest seniority and qualifications have first priority to fill header positions. (Id. ¶ 23.) Acting as a header, Plaintiff selected Linda Walker to work on his longshoreman group, commonly called a gang. (Id. ¶ 22.) Later in 2008,

3

according to Plaintiff, he was not chosen for a header position despite having the highest seniority. (Id. ¶ 25.)

As a result, Plaintiff filed grievances against Defendant ILA President Willie Seymore and Vice President Eddie McBride for violating seniority header selection rules. (Id. ¶ 30.) On August 13, 2009, Plaintiff submitted a written grievance to the president of Defendant GSA, Steve Zadach, requesting that his grievance be heard at the next Port Grievance Committee meeting. (Id. ¶ 33.) On September 14, 2009, Defendant ILA Vice President McBride issued a disorderly conduct grievance against Plaintiff. Months later, in early 2010, the Port Grievance Committee ruled that Plaintiff should be suspended from working as a longshoreman for seven days. (Id. ¶ 35.) According to Plaintiff, he was suspended for hiring Linda Walker and other females to work on the gang, and filing a grievance alleging violation of seniority rules in not selecting him as a header. (Id. ¶¶ 36, 37.) Plaintiff then filed an EEOC charge. (Id. ¶ 38.)

In March 2010, the Defendant ILA's Executive Board took no action against Eddie McBride and Willie Seymore for Plaintiff's charges as to seniority header selection. Plaintiff was unable to work as a header until the completion of the EEOC investigation. In January 2011, he

was reinstated as a header. (Id. ¶ 45.) Plaintiff further alleges that over the following months, several fabricated grievances were filed against Plaintiff for insubordination (id. ¶ 50), leaving a job without securing a replacement (id. ¶ 51), disorderly conduct for complaining about the dispatching of gangs (id. ¶ 53), and two other disorderly conduct incidents (id. ¶¶ 54, 55). In December 2011, the Grievance Committee suspended Plaintiff for twenty-one days as a result of one of the disorderly conduct grievances. (Id. ¶ 56.) After Plaintiff returned to work following his suspension, he was then found guilty of the insubordination grievance and was again suspended. Plaintiff's header status was also permanently revoked. (Id. ¶ 58.) Plaintiff received his right to sue (id. ¶ 59) and timely filed this action. Plaintiff's suit seeks to recover for retaliation under Title VII, attorney's fees, and punitive damages. (Id. ¶¶ 79-95.)

Both Defendants GSA and ILA filed motions to dismiss. Defendant GSA argues dismissal is proper because Plaintiff failed to arbitrate the claims as required by the CBA, failed to adequately plead that GSA meets the statutory definition of employer under Title VII or was ever Plaintiff's employer, and failed to plead with specificity the requisites components of a Title VII retaliation claim.

5

(Doc. 36-1.) Defendant ILA argues that Plaintiff has failed to exhaust his CBA grievance procedures. (Doc. 43.) In response, Plaintiff contends that the CBA does not expressly require arbitration for claims under Title VII, that the CBA is not binding, that the CBA is unconscionable under Georgia law, and that Defendants meet the statutory definition of employer under Title VII. (Doc. 40; Doc. 54.)

## ANALYSIS
### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[3] "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not

---

[3] Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided. Iqbal, 556 U.S. at 684 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

6

do." Iqbal, 556 U.S. at 678 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (quotations omitted).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal, 578 F.3d at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. As such, a district court may "insist upon some specificity in [the] pleading before allowing a potentially massive factual controversy to proceed." Id. at 558.

II. THE ARBITRABILITY OF PLAINTIFF'S TITLE VII CLAIMS

An arbitration agreement's validity is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005). There is a strong federal policy in favor of arbitration and "[t]he FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreements." Lambert v. Austin Ind., 544 F.3d 1192, 1197 (11th Cir. 2008). Arbitration clauses should be construed generously and "resolving all doubts in favor of arbitration." Becker v. Davis, 491 F.3d 1292, 1305 (11th Cir. 2007).

However, a union-negotiated waiver of employees' statutory rights to a judicial forum for employment discrimination must be clear and unmistakable. Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 80 (1998). In Wright, the United States Supreme Court reaffirmed the principle of Gardner-Denver, 415 U.S. 36 (1974), that "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." Wright, 525 U.S. at 80. The Court opined that an agreement's language stating "this Agreement is intended to cover all matters affecting wages, hours,

and other terms and conditions of employment" and "anything not contained in this Agreement shall not be construed as being part of this Agreement did not meet the clear and unmistakable standard. Id. at 80-81. Moreover, Wright held that a union employee subject to a seniority plan with a separate grievance procedure also does not contain a clear or unmistakable waiver. Id. at 73-74.

At present, Plaintiff's Title VII retaliation claim is not altered by the CBA—the CBA is very general, and nearly identical in nature to the one at issue in Wright. The CBA provides for arbitration of "[m]atters under dispute." (Doc. 9, Ex. A at 43.) The Supreme Court in Wright expressed concern over that exact phrase indicating that it "could be understood to mean matters in dispute under the contract." Wright, 525 U.S. at 80. Further examination of the CBA in the present case demonstrates more similarities to the collective bargaining agreement at issue in Wright. Clause 15(F) of the CBA states "this Agreement is intended intended to cover all matters affecting wages, hours, and other terms and conditions of employment." (Doc. 9, Ex. A at 45.) Yet, in the same paragraph, the CBA provides that "[a]nything not contained in this Agreement shall not be construed as being part of [the CBA]." (Id.) These clauses, too, are verbatim to the terms in Wright, where

the Supreme Court doubted that there was a clear and unmistakable incorporation of employment-discrimination laws. See Wright, 525 U.S. at 81. Lastly, any attempt to rely on the seniority plan provisions of the CBA for a clear and unmistakable waiver is similarly misplaced. The seniority plan specifically limits its grievance procedures, just as in Wright, to "any dispute concerning or arising out of the terms and conditions of [the CBA]." (Doc. 9, Ex. A at 80.) See Wright, 525 U.S. at 80. Because the CBA lacks a clear and unmistakable waiver, there was never an agreement to arbitrate these claims, and Defendants' motions to dismiss on these grounds are denied.[4]

III. AMENDED COMPLAINT AND SCOPE OF EEOC CHARGE

Defendant GSA also moves to dismiss on the grounds that the amended complaint exceeds the scope of his initial EEOC charge of retaliation. (Doc. 36-1 at 13.) Plaintiff contends he is bringing a Title VII retaliation claim that amplifies and clarifies his EEOC charge. (Doc. 40 at 20.) A plaintiff may raise claims that "amplify, clarify, or more clearly focus" allegations made in an administrative complaint, but they may not raise allegations of new acts of discrimination." Gregory v. Ga. Dep't of Human Res.,

---

[4] Because of this finding, Defendant GSA's Motion in the Alternative to Refer to Arbitration is **DISMISSED AS MOOT**. (Doc. 36.)

10

355 F.3d 1277, 1279-81 (11th Cir. 2004). An EEOC charge should not be strictly interpreted, and procedural technicalities to bar claims brought under Title VII should be avoided. Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460-61 (1970)).[5] With that guidance, the Court cannot find that Plaintiff's Title VII retaliation claims exceed the scope of his EEOC charge. Accordingly, Defendant GSA's motion to dismiss on this ground is denied.

## IV. PLAINTIFF'S TITLE VII RETALIATION CLAIMS

Although a complaint in an employment discrimination lawsuit "need not contain specific facts establishing a prima facie case of discrimination under the McDonnell Douglas framework," the " 'ordinary rules for assessing the sufficiency of a complaint [still] apply.' " Uppal v. Hosp. Corp. of Am., 482 F. App'x 394, 396 (11th Cir. 2012) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)). The Supreme Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that a plaintiff must satisfy in order to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 511. In fact, the

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

11

Supreme Court has "rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings.'" Id. (quoting McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 (1976)). Therefore, the "Federal Rules do not contain a heightened pleading standard for employment discrimination suits" and "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. Id. at 515. Critically, however, the complaint must provide enough factual matter—taken as true—to suggest intentional discrimination. See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (citations omitted).

A.  "Employer" under Title VII

Title VII defines an employer as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). For Title VII purposes, a person includes "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual

companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a). Whether a defendant meets the statutory definition of employer is a threshold jurisdictional matter. See Virgo v. Riviera Beach Assocs., 30 F.3d 1350, 1359 (11th Cir. 1994). A plaintiff must show that an employer had fifteen or more employees for the requisite period provided under the statutes before Title VII claims can be reached. Lyes v. City of Riviera Beach, 166 F.3d 1332, 1340-41 (11th Cir. 1999). The term employer is to be interpreted liberally. McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. 1987).

The Eleventh Circuit has instructed courts to look beyond the "nominal independence of an entity and ask whether two or more ostensibly separate entities should be treated as a single, integrated enterprise" when determining whether a plaintiff's employer falls within the definition of Title VII. Lyes, 166 F.3d at 1341. To that end, the Eleventh Circuit has identified three circumstances where aggregation of multiple entities is appropriate: the integrated enterprise—where two entities are highly integrated with respect to ownership and operations; joint employers—where two entities contract with each other and one company retains sufficient control

over the terms and conditions of the other company's employees; and, the agency test—where an employer delegates sufficient control of some traditional rights over employees to a third party. Id. (citations omitted).

While the number of employees is a jurisdictional question, an issue of whether two distinct, but related business entities—such as Defendant ILA and Defendant GSA—is a fact-intensive inquiry, and one more suited for disposition by this Court on summary judgment than on the current motion to dismiss. See Lyes, 166 F.3d at 1340-42 (analyzing district court's aggregation of separate entities at summary judgment stage of litigation); Virgo, 30 F.3d at 1359-62 (same); McKenzie, 834 F.2d 932-34 (same). Accordingly, taking Plaintiff's amended pleadings as true, Defendants' motions on these grounds are denied.

B.  Title VII Retaliation

Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any [employee] . . . because he has opposed any practice made unlawful by [42 U.S.C. § 2000e], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation under Title VII occurs when an employee engages in protected activity, and suffers a materially adverse employment action that is causally related to that activity. See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998); see also Hopkins v. St. Lucie Cnty. Sch. Bd., 399 F. App'x 563, 566 (11th Cir 2010). An adverse employment action is a "tangible employment action [that] constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1991). However, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). A plaintiff must show "a serious and material change in terms, conditions, or privileges of employment." Id. at 1239. A plaintiff's subjective view is irrelevant, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Id.

In terms of causation, a plaintiff must show that the decision-maker was aware of the protected conduct. Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir.

2002). Further, to establish the necessary causal link, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993). "At minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).

At this stage of the proceedings, Plaintiff has provided enough factual matter to survive a motion to dismiss. Taking the pleadings as true, Plaintiff causally links his removal of header status and numerous suspensions to his refusal to engage in discriminatory treatment of female workers and his filing of grievances against Willie Seymore and Eddie McBride. The pleadings are sufficiently detailed to satisfy the applicable pleading standard. Accordingly, Defendants' motions to dismiss must be denied.

C. Plaintiff's Attorney's Fees and Punitive Damages Claims

Finally, Plaintiff seeks to recover attorney's fees pursuant to 42 U.S.C. § 1988(b) and punitive damages. (Doc. 35 ¶¶ 89-95.) Because at this stage of the

proceedings, Plaintiff's Title VII claims survive, so too do his claims for attorney's fees and punitive damages.

## CONCLUSION

Bound by Supreme Court precedent of a collective-bargaining agreement nearly identical to the one at issue in this case, this Court concludes that the CBA at issue in this case lacks a clear and unmistakable waiver of Plaintiff's Title VII rights, and thus, Plaintiff was not required to submit his claim to arbitration. Also, Plaintiff's amended claims do not exceed the scope of his EEOC charge. Finally, the Court finds that Plaintiff has met the threshold pleading requirements of a Title VII retaliation claim, thereby precluding dismissal. For the foregoing reasons, Defendants' Motions to Dismiss are **DENIED**.

SO ORDERED this 18th day of March 2013.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA