IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ROBERT WILLIAMS,                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        CASE NO. CV411-284
                                    )
GEORGIA STEVEDORE                   )
ASSOCIATION, INC. and               )
INTERNATIONAL LONGSHOREMEN'S        )
ASSOCIATION LOCAL NUMBER            )
1414, SAVANNAH, GEORGIA,            )
                                    )
        Defendants.                 )
_____)

## O R D E R

Before the Court are Defendant Georgia Stevedore
Association, Inc.'s ("GSA") (Doc. 120) and Defendant
International Longshoremen's Association Local Number 1414,
Savannah, Georgia's ("ILA") (Doc. 116) Motions for Summary
Judgment. Plaintiff has filed responses in opposition to
both motions. (Doc. 128; Doc. 133.) For the reasons that
follow, Defendants' Motions for Summary Judgment are
**GRANTED** and Plaintiff's claims are hereby **DISMISSED**.
Accordingly, Defendant ILA's Motion to Strike (Doc. 141) is
**DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close
this case.

This case involves allegations of improper retaliation in employment against Plaintiff by Defendants GSA and ILA for actions Plaintiff took while a worker for Defendants.[1] Plaintiff is a male longshoreman employed pursuant to a Collective Bargaining Agreement ("CBA") between Defendants GSA and ILA. (Doc. 35 ¶ 5.) Defendant ILA is a labor union that contracts with employers to secure employment for employees. (Id. ¶ 9.) Defendant GSA is the collective bargaining representative for the multiple stevedore companies operating at the Port of Savannah, Georgia. (Doc. 128 at 2.) Defendant ILA uses a hiring hall to supply workers to the companies represented by Defendant GSA. (Doc. 35 ¶ 10.)

In November 2008, Plaintiff was working as a header—a person that acts as foreman and selects from the hiring hall qualified workers to work as a group of longshoremen known as a gang. (Id. ¶¶ 20, 21.) Plaintiff is not a "Company Header," meaning a person who is designated to normally act as a header by one or more of the stevedore

---

[1] For the purposes of these motions for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986). Because the Court only addresses Defendants' motions, all facts are construed in the light most favorable to Plaintiff.

companies. However, Plaintiff could act as a header based on his seniority status when Company Headers were not available. (Doc. 133 at 2-3.) Persons with the highest seniority and requisite qualifications have first priority to fill header positions. (Id. at 2.) Acting as a header, Plaintiff selected a female longshoreman named Linda Walker to work on his gang. (Doc. 35 ¶ 22.) On December 12, 2008, Plaintiff was told that he could not take out a gang as a header despite having the highest seniority of the workers present. (Doc. 133 at 7-8.) As a result, Plaintiff filed grievances against Defendant ILA President Willie Seymore and Vice-President Eddie McBride for violating seniority header selection rules. (Id. at 8.)

Plaintiff continued to serve as a header on various occasions in 2009 and hired Walker another four times, despite his co-workers warning him not to do so. (Id.) Apparently, Walker had a reputation as a troublemaker and had frequently complained about gender discrimination by Defendant ILA in the past. (Id.) In January 2010, after grievances were filed against Plaintiff for disruption in the hiring hall, the Grievance Committee ruled that Plaintiff could not serve as a header for one year. (Id.) According to Plaintiff, former GSA President Steve Zadach told Plaintiff that he lost his header status for hiring

Walker.[2]   (Id.)   Following his conversation with Zadach, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC").  (Doc. 35 ¶ 38.)

Throughout 2010, Plaintiff was unable to work as a header, but was eventually reinstated in January 2011. (Id. ¶ 45.)  Plaintiff further alleges that two fabricated disorderly conduct grievances were filed against him in the second half of 2011, resulting in a 35 day suspension commencing on December 13, 2011.  (Doc. 136, Attach. 8 ¶¶ 40, 44.)  After Plaintiff returned to work following his suspension, the Grievance Committee suspended him again for 30 days and permanently revoked his header status after finding him guilty of insubordination for an incident on June 13, 2011.  (Doc. 133 at 23-24.)  Prior to the January 31, 2013 hearing, but after the June 13, 2011 incident, Plaintiff received his right to sue from the EEOC and timely filed this action.  (Doc. 35 ¶ 59.)  On May 2, 2012, Plaintiff filed an amended complaint seeking to recover for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, as well as attorney's fees and punitive damages.  (Doc. 35.)

---

[2] Zadach passed away some time after this incident occurred and never offered any testimony regarding his alleged statements.  (Doc. 133 at 9.)

Both Defendants ILA and GSA filed motions for summary judgment. (Doc. 116; Doc. 120.) Defendant ILA argues summary judgment is proper because Plaintiff is unable to either establish a prima facie case of retaliation under Title VII or that Defendant ILA's proffered legitimate reasons for its actions are pretextual. (Doc. 116 at 1.) Defendant ILA also argues that some of Plaintiff's claims should be dismissed for improper pleading. (Doc. 118 at 12.) Defendant GSA argues that summary judgment is proper because Title VII does not apply to it, the decision of the Grievance Committee was final and binding pursuant to the CBA, and Plaintiff is unable to establish a prima facie case of retaliation under Title VII or show that the Grievance Committee's proffered legitimate reasons for its actions are pretextual. (Doc. 120 at 1-2.) Plaintiff has filed responses in opposition to both motions. (Doc. 128; Doc. 133.)

## ANALYSIS

### I.    STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that

there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

## II. PLAINTIFF'S TITLE VII RETALIATION CLAIMS

While each Defendant presents their own independent defense theories, both argue that Plaintiff cannot establish a prima facie case of retaliation or, even if Plaintiff can establish such a case, there were legitimate, non-discriminatory reasons for the adverse employment actions of which Plaintiff complains. In the interest of

efficiency, the Court addresses these issues together and prior to addressing Defendants' other arguments. However, because the Court ultimately finds no questions of material fact that could support Plaintiff's retaliation claims against either Defendant, it need not address Defendants' other arguments.

### A. Prima Facie Retaliation

Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any [employee] . . . because he has opposed any practice made unlawful by [42 U.S.C. § 2000e], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation under Title VII occurs when an employee engages in protected activity, and suffers a materially adverse employment action that is causally related to that activity. See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998); see also Hopkins v. St. Lucie Cnty. Sch. Bd., 399 F. App'x 563, 566 (11th Cir 2010). An adverse employment action is a "tangible employment action [that] constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision

causing a significant change in benefits." <u>Burlington</u> <u>Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1991). However, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." <u>Davis v. Town of Lake Park Fla.</u>, 245 F.3d 1232, 1238 (11th Cir. 2001). A plaintiff must show "a serious and material change in terms, conditions, or privileges of employment." <u>Id.</u> at 1239. A plaintiff's subjective view is irrelevant, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." <u>Id.</u> Further, to establish the necessary causal link, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." <u>E.E.O.C. v. Reichhold Chem., Inc.</u>, 988 F.2d 1564, 1571-72 (11th Cir. 1993). "At minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993).

With regard to the first prima facie element of a retaliation claim, Plaintiff argues he engaged in protected activity in three ways: (1) he hired Walker, who had previously complained of employment discrimination; (2) he filed an EEOC claim; and (3) he filed this instant lawsuit.

(Doc. 133 at 7.) There is no question that filing an EEOC charge or a civil rights lawsuit, such as this one, qualifies as protected activity.[3] See Gerard v. Bd. of Regents of Ga., 324 Fed. App'x 818, 825 (11th Cir. 2009) ("[Protected activity] includes . . . complaints lodged with the EEOC and discrimination-based lawsuits."). These actions are protected under the "participation clause" of 42 U.S.C. § 2000e-3(a), which prohibits retaliation against the employee for participating in any investigation, proceeding, or hearing pursuant to Title VII. See E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). Plaintiff's hiring of Walker, however, may only qualify as protected activity if it falls under the statute's "opposition clause," which prohibits retaliation for opposing an employer's discriminatory practices. See id.

For a plaintiff to show that he has engaged in protected activity under the opposition clause, he must not only show that he had a subjective, good faith belief that

---

[3] Defendant ILA argues that Plaintiff should be prohibited from alleging retaliation for the EEOC claim or this lawsuit because they were not mentioned in Plaintiff's amended complaint. (Doc. 118 at 12.) Although the Court agrees that the amended complaint is not particularly clear or well-pled, a broad reading could conceivably encompass the EEOC claim and current litigation as well. Regardless, because these claims still fail on the merits, the issue is moot.

his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of all the facts. See Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). Plaintiff alleges he hired Walker in the face of Defendants' unlawful and discriminatory practice of discouraging headers from hiring her. But even assuming Plaintiff truly had a subjective belief that Defendants discriminatorily opposed Walker's employment,[4] the Court can find no evidence to support that such a belief was objectively reasonable. It is undisputed that Plaintiff knew nothing of the facts surrounding Walker's discrimination complaints and never witnessed any acts of discrimination against her. Plaintiff also alleges only that his co-workers, rather than either Defendant, ever advised against hiring her. (Doc. 133 at 8.)

---

[4] Plaintiff admits he had no idea why he was subject to discipline in December 2008 following his hiring of Walker, and did not file his EEOC complaint until after allegedly hearing the reason from Zadach in January 2010. (Doc. 128 at 22-23.) While neither Defendant argues the point, and although it is not pivotal to the Court's analysis, it is nonetheless difficult to conceive that Plaintiff could subjectively believe he was engaged in protected anti-discrimination activity to the bereavement of his employers, yet fail to consider until over a year later that the disciplinary actions taken against him might be related.

11

Plaintiff's argument that hiring Walker was a protected act because she had a reputation as a troublemaker who had complained of gender discrimination in the past is wholly without merit. (Doc. 133 at 8.) Even assuming that Walker did have such a reputation, the record is devoid of any evidence to suggest that Defendants sought to prevent her employment because of it. On the contrary, Walker was hired a total of 333 times by 104 different headers between March 31, 2008 and August 20, 2012, apparently without any other headers incurring similar retaliatory action. (Doc. 123, Attach. H ¶ 26.) Also, Plaintiff admits that Walker had not even filed an EEOC claim alleging employment discrimination until 2009, well after Plaintiff hired her in an act of alleged protected activity. (Doc. 133 at 7.) Quite simply, Plaintiff has put forth no evidence that could support an objectively reasonable belief that Defendants discriminatorily opposed Walker's hiring. Accordingly, Plaintiff's retaliation claims stemming from his hiring of Walker must fail.

As to the second element of a prima facie retaliation claim, Plaintiff has presented four possible adverse employment actions. The first two—losing his header status in December of 2008 and again after the January 5, 2010 Grievance Committee hearing—were allegedly in response to

his hiring of Walker. (Doc. 133 at 12-16.) However, these claims necessarily fail because the Court concludes that this action does not qualify as protected activity. Plaintiff also alleges he suffered retaliation in the form of various grievances that resulted in multiple suspensions and the permanent loss of his header status on January 31, 2012 for filing both an EEOC claim and this lawsuit. (Id. at 17-19.) As discussed above, these actions clearly qualify as protected activity. See Gerard, 324 Fed. App'x at 825. Accordingly, the Court must determine whether the grievances and their resulting punishments qualify as adverse employment actions under Title VII.

As discussed above, an adverse employment action is one that constitutes a significant change in a plaintiff's employment status such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Burlington, 524 U.S. 742, 761. Here, the Court finds that the suspensions and permanent revocation of Plaintiff's header status represent significant changes in his employment status.[5] These actions resulted in

---

[5] Defendant ILA argues that the mere filing of grievances alone does not qualify as a materially adverse action. (Doc. 140 at 7.) However, because the grievances resulted in an eventual thirty-five day suspension, the Court sees

obvious financial losses to Plaintiff through diminished employment opportunities and a permanent loss of his ability to serve in a higher-paying managerial position. Accordingly, the Court finds them to constitute adverse employment actions under Title VII.

Finding that Plaintiff both engaged in protected activity and suffered adverse employment actions, the Court turns to Plaintiff's contentions that a causal connection exists between the two. In general, this is not an incredibly high bar, as plaintiffs must only present some evidence to indicate the adverse employment actions were not completely unrelated to the protected activity in order to establish a prima facie case of retaliation. Reichhold, 988 F.2d at 1571-72. Here, Plaintiff specifically argues that the disorderly conduct grievances and their resulting suspension were in retaliation for filing the EEOC claim (Doc. 133 at 17-19), while the thirty-day suspension and permanent loss of his header status was retaliation for filing the instant lawsuit (id. at 19).

Plaintiff has presented no direct evidence that the disorderly conduct grievances were related to his EEOC charge. However, Plaintiff correctly points out that a

---

no reason to distinguish between the separate stages of the disciplinary process. The suspension would never have occurred but for the filing of the grievances.

causal connection can be shown where the protected activity and the adverse employment action occur very close in time to one another. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Plaintiff relies on this "temporal proximity" argument to establish a causal link between his EEOC filing and his eventual suspension in December 2011. While Plaintiff admits that no actions were taken against him in 2010, he argues that the almost two-year delay can be explained because he was not allowed to serve as a header in 2010 and thus, Defendants had no opportunity to retaliate against him. (Doc. 133 at 17.) However, the Court finds this argument wholly without merit. Unlike the circumstances in the numerous cases Plaintiff cites, nothing prevented Defendants from retaliating against Plaintiff prior to the filing of the first disorderly conduct grievance in the middle of 2011. Cf. Dale v. Wynne, 497 F. Supp. 2d 1337, 1346 (N.D. Ala. 2007) (finding temporal proximity not defeated because first opportunity for retaliation occurred after Plaintiff's return to work after six-week gap).[6] In addition, Plaintiff regained his

_____

[6] Plaintiff's response to Defendant ILA's Motion for Summary Judgment also seems to suggest, but does not actually argue, that the grievances may also have been filed in retaliation for Plaintiff hiring Walker four times in the first half of 2011. (Doc. 133 at 18.) However, there again exists no direct evidence for this causation argument

ability to serve as a header, and did so serve, for approximately six months before a grievance was ever filed against him. This gap in time is simply too long to establish any kind of causal connection to support a claim of retaliation. See Clark Cnty., 532 U.S. 268 (finding three month delay too long to infer causation). Lastly, Plaintiff told the Grievance Committee at the December 13, 2011 hearing that he thought the disorderly conduct grievances were filed in retaliation for previous grievances he had filed against McBride and Seymore regarding his seniority status. (Doc. 133 at 31.) While Plaintiff may feel his seniority was not properly respected, such is not grounds for a retaliation claim under Title VII. Accordingly, because Plaintiff has offered no other evidence that would suggest the grievances were filed in retaliation for the EEOC charge, Plaintiff's

---

and the temporal gap between the first hiring and the first grievance filed was well over four months. (Id.) The Court finds this temporal gap simply too large to indicate any sort of causal connection. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not [close] enough."). Accordingly, to the extent that Plaintiff may also have intended to allege that the grievances were filed in retaliation for instances of hiring Walker in 2011, these claims fail as a matter of law.

claims regarding the disorderly conduct grievances must fail.

With respect to the January 31, 2012 hearing—the last possible incident that could satisfy the requirements of a prima facie retaliation claim—Plaintiff can point to but one piece of evidence to suggest that his suspension and permanent revocation of header status were connected to the filing of the instant lawsuit.[7] Specifically, Plaintiff alleges that Defendant ILA's President, Willie Seymore, stated at the hearing "we have to be careful what we say because there was a lawsuit being filed." (Doc. 133 at 11.) While Defendants dispute the truthfulness of this allegation, the Court nonetheless finds that the evidence could allow a reasonable jury to find the Grievance Committee was at least aware of the lawsuit.

Beyond simple awareness, however, it is less clear as to how the statement may be indicative of causation. Plaintiff argues that Seymore's statement and subsequent discussion of the insubordination grievance with the

---

[7] Plaintiff also argues that the loss of his header status and the filing of this lawsuit are close enough in time to show causation (Doc. 128 at 26), but this argument fails for the same reasons that doomed his EEOC retaliation claims. Over a year passed since Plaintiff filed this lawsuit to when his header status was permanently revoked, thus making the temporal gap simply too large to support an inference of causation. See Thomas, 506 F.3d at 1364.

Grievance Committee is evidence of discriminatory intent. (Doc. 133 at 30.) However, it seems more likely that the statement simply suggests to the committee that it cautiously evaluate Plaintiff because an improper punishment could come back to haunt them. Still, it is at least possible that a reasonable jury could have the same impression of the evidence as Plaintiff, and the Court cannot conclude that the two incidents are unrelated as a matter of law. Thus, taking the facts in the light most favorable to Plaintiff, the Court finds a prima facie case of retaliation is established for this one claim alone and proceeds to the next step of analysis.

### B. Legitimate Reason or Pretext

Should a plaintiff establish a prima facie case of retaliation, "the employer has the burden of articulating a legitimate non-discriminatory reason for the challenged employment decision." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999). The plaintiff must then demonstrate that the proffered non-discriminatory reason can be shown at trial to be mere pretext for unlawful retaliation. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). If the proffered non-discriminatory reason might motivate a reasonable employer to take the same action, a plaintiff

must rebut that reason directly, and a plaintiff "cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. Al Transport, 229 F.3d 1012, 1030 (11th Cir. 2000).

Here, Plaintiff permanently lost his header status and received a thirty-day suspension because of a dispute he had with a supervisor on June 2, 2011. Plaintiff, serving as a header, was ordered to terminate another employee and refused. (Doc. 128 at 28.) In what was apparently a heated exchange, the supervisor first attempted to terminate the employee directly, but the employee refused to leave. (Doc. 133 at 21.) Plaintiff sided with the employee and argued that it would be difficult or impossible to find a replacement at this point in the workday. (Id. at 20.) The supervisor instructed Plaintiff to terminate the employee or Plaintiff would himself be terminated. (Id. at 19.) When Plaintiff refused to do so, grievances were then filed against both Plaintiff and the employee, leading the Grievance Committee to ultimately permanently revoke Plaintiff's header status and suspend him for thirty days. (Id. at 20-21.)

The Court finds that the facts presented indeed demonstrate a legitimate, non-discriminatory reason to support the disciplinary action taken. It is undisputed

that Plaintiff disobeyed a direct order from a superior, and the June 2, 2011 hearing found Plaintiff guilty of insubordination. Plaintiff fails to identify any facts showing Plaintiff did not commit the act for which he was disciplined, nor is there any indication that the act should not give rise to disciplinary action. Accordingly, the Court finds Defendants have met their burden, and Plaintiff must now show evidence that Defendants' proffered reasons are actually pretext for retaliation.

Plaintiff argues that the June 2, 2011 incident is mere pretext because the punishment is out of line with those received by others charged with insubordination (Doc. 133 at 25), because the standards for punishment in the CBA are arbitrary (Doc. 133 at 31), and because the Grievance Committee improperly relied on evidence from another hearing when determining Plaintiff's guilt (Doc. 133 at 19). However, the Court finds all of these arguments wholly inadequate to even suggest pretext in this case. Plaintiff may take issue with how his punishment was administered, or feel that it was unfair, but "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions . . . our inquiry is limited to whether the employer gave an honest explanation of its behavior.' " Elrod v. Sears, Roebuck &

Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)). Plaintiff disobeyed a direct order from his superior, an act the Court finds could easily motivate an employer to take action. Plaintiff's disagreement with the severity of the consequences of his actions does not make the Grievance Committee's determination retaliatory. Also, the fact that no other longshoreman's header status was permanently revoked fails to demonstrate to the Court " 'such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' " Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted). At most, Defendants are guilty of treating Plaintiff unfairly in the grievance process, but there is simply no evidence before the Court to indicate that the June 2, 2011 incident was used as pretext to retaliate against Plaintiff's filing of this lawsuit. Defendants have presented a legitimate, non-discriminatory reason for the actions taken, and it is not the purview of the Court to second guess the wisdom of their decision or protect Plaintiff from an overly harsh or

mean-spirited employer. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1333 (11th Cir. 1998) ("The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons."). Accordingly, the last of Plaintiff's claims also fails and the Court need not address Defendants' additional arguments regarding Plaintiff's claims.

## CONCLUSION

For the reasons the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. 116; Doc. 120) are **GRANTED** and Plaintiff's claims are hereby **DISMISSED**. Accordingly, Defendant ILA's Motion to Strike (Doc. 141) is **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 28th day of March 2014.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA